UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DZENAN CAMOVIC<br><br>                    Defendant. | CRIMINAL ACTION<br><br>No. 20-CR-326 (RPK)<br><br>AFFIRMATION OF ROBERT G. STAHL IN SUPPORT OF MOTION TO SUPPRESS EVIDENCE |

The undersigned, Robert G. Stahl, Esq. of full age, upon my oath hereby declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that:

1.  I am an attorney of record for Mr. Dzenan Camovic and, as such, am fully familiar with the facts of the case based on a review of discovery materials, court submissions, and materials uncovered through independent investigation. This declaration is made in support of Mr. Camovic's Motion to Suppress Evidence and relates facts contained within the discovery materials and other sources.

## FACTUAL BACKGROUND

### *The Arrest*

2.  At approximately 11:50 p.m. on June 3 in the vicinity of 885 Flatbush Avenue in Brooklyn, Mr. Camovic allegedly approached two New York City Police Department officers on curfew enforcement patrol and stabbed one of the police officers in the neck in a surprise assault. In the melee that followed, Mr. Camovic is alleged to have wrested a firearm from the other

1

officer, and exchanged gunfire with officers. Citing the video footage, the Government maintains that during the struggle Mr. Camovic yelled "Allahu Akbar," a phrase the Government asserts is "frequently exclaimed by perpetrators of violent jihadist attacks." According to hospital records, one officer had a superficial stab wound to the neck and two other officers were shot in the finger.

3.   The Government asserts that as Mr. Camovic was taken into custody, NYPD Officer Miguel Van Brackle seized a black LG smart cellular phone from Mr. Camovic's person (the "LG Phone"). Shortly after Mr. Camovic was taken into custody, Officer Van Brackle handed the LG Phone to Detective Soto of the Joint Terrorism Task Force.

*The Consent to Search*

4.   Shortly after the arrest, NYPD officers responded to Mr. Camovic's residence at 580 East 22nd Street, Apartment 5 in Brooklyn (the "Camovic Residence"), where Mr. Camovic lived at the time with his parents and five siblings. Only two of Mr. Camovic's family members were present in the Camovic Residence at the time: Mr. Camovic's 19-year-old sister, Dzenana Camovic (hereinafter "Dzenana"), and his father, Husejin Camovic (hereinafter "Husejin"). (*See* Husejin Camovic Affidavit in Support of Defendant's Motion to Suppress, hereinafter "Husejin Affidavit").

5.   As set forth in the Husejin Affidavit, multiple law enforcement officers – first NYPD and later federal authorities – arrived at the Camovic Residence at some time between 1:00 a.m. to 2:00 a.m. on June 4, 2020, and did not leave until approximately 8:00 p.m. the same day, a period of approximately eighteen (18) hours. In sum and substance, according to Husejin, during this lengthy period:

    a. Husejin reasonably believed that he was not free to leave his own residence.

    b. Husejin was separated from his nineteen-year-old daughter Dzenana and they were both questioned for hours.

    c. Husejin's cellular phone was in the control of law enforcement and he was not permitted to make calls outside the presence of law enforcement.

    d. At approximately 9:00 a.m., Husejin received a call from his brother-in-law, Saudin, who told him to cease speaking because an attorney had been retained for him. Husejin invoked his right to counsel at that time. A FD-302 provided by the Government supports Husejin's account, noting that at approximately 9:00 a.m., Husejin received a call "from his brother-in-law who told him not to talk anymore because he retained an attorney for him. *The interview was halted at this time.*"

    e. Despite this, questioning continued, and Husejin was warned that if he did not cooperate with the investigation, the FBI would pursue the "ICE investigation" of his daughter Dzenana.

    f. At approximately 5:20 p.m., after over twelve hours of detention and questioning, Husejin was pressured to sign a consent to search form. Before he signed, agents convinced him that a warrant would be granted by a judge if he did not sign the consent form, but that it would take an additional seventeen (17) hours or more until the warrant could be issued the following morning.

6. At approximately 5:20 p.m. on June 4, 2020, after hours of pressure, Husejin signed a Consent to Search Form that purportedly authorized a search of "580 East 22nd Street, Apartment 5, Brooklyn NY 11226 and all the contents therein." (Exhibit A, DC_251). The Consent to Search Form bears a signature of Special Agent Bilal Morgan. An additional consent

3

to search form signed by Husejin that does not bear a time stamp purportedly authorized a search of the "kitchen cubbard [sic] – knife." (Exhibit B).

7.  After Husejin signed the Consent to Search Form, agents seized multiple items, as memorialized on a form FD-886 Evidence Item Collected Log (Exhibit C):

   a. One Samsung cellular phone bearing IMEI number 358689100215795 found in a location labeled "dresser";

   b. One Samsung Gold Cellphone bearing IMEI: 354255092268384 found in a location labeled "closet";

   c. One SanDisk 64 GB thumb drive and one 4 GB Kingston thumb drive found in a location labeled "desk";

   d. One Philips Voice Tracer S/N DVT11100282135 found in a location labeled "closet";

   e. One Samsung Tablet model SM T520 found in a location labeled "closet";

   f. One Silver iPhone Cellphone model A1660 FCCID: BCG-E3085A found in a location labeled "dresser";

   g. One Polaroid Tablet model PMID1000B found in a location labeled "closet";

   h. 25 CDs, DVDs labeled "Jihad," "Abu Bakr", "Awlaqi," "etc." found in a location labeled "closet";

   i. Knife, silver with black handle found in a location labeled "dresser";

4

    j. Black blade labelled "Camillus Titanium" found in a location labeled "desk";

    k. X box Ones S/N 312890564248

<em>The June 4 LG Phone Warrant. 20-MJ-411 (Exhibit D)</em>

8. At 9:22 p.m. on June 4, 2020, United States Magistrate-Judge Steven M. Gold issued a search warrant authorizing a search of the LG Phone that was seized from Mr. Camovic's person incident to arrest (the "June 4 LG Phone Warrant), based upon an affidavit submitted by Special Agent Colin McClafferty. (Exhibit D). The June 4 LG Phone Warrant found probable cause that a search of the LG Phone would uncover records relating to "violations of 18 *U.S.C.* § 231(a)(3) (obstruction of law enforcement officer related to civil disorder), 18 *U.S.C.* § 922(g)(5) (possession of a firearm by an illegal alien) and 18 *U.S.C.* § 2339B (provision of material support to a foreign terrorist organization) (collectively, the "Subject Offenses"), including motive evidence to commit the Subject Offenses, involving DZENAN CAMOVIC his co-conspirators, associates and others with or about whom they have communicated." (*Id.* at DC_27).

9. Crucially, the search warrant affidavit submitted in support of the application cited to evidence obtained during the June 4 Consent Search, including alleged "DVDs indicating that they contained violent jihadist propaganda." (*Id.* at DC_33). The only other evidence in the June 4 LG Affidavit to support the notion that Mr. Camovic's alleged assault was driven by extremist religious ideology – or that evidence of a terrorist motivation would be found among the personal items and electronics in his home – was the allegation that Mr. Camovic yelled "Allahu Akbar" during the melee. (*Id.* at DC_31-37).

5

10. Though the June 4 LG Affidavit references text messages sent from Mr. Camovic to another individual prior to the assault, none of the messages cited in the June 4 LG Phone Affidavit discuss terrorism or an intention to commit a terrorist or any other violent act. (*Id.* at DC_31-37). Mr. Camovic's communications with a person identified as Individual-1 just before the attack reveal merely that Individual-1 told him there had been a shooting in the neighborhood. (*Id.* at DC_35). Mr. Camovic's text messages reveal no information about an intention to commit an assault or his motivation for assaulting police officers. (*Id.* at DC_34-35). Nor do the messages suggest that Mr. Camovic coordinated the attack with any co-conspirators, including the persons to whom he was sending messages prior to the incident. (*Id.*).

*The June 5 Warrant To Search Electronic Devices Seized During The June 4 Consent Search. 20-MJ-414. (Exhibit E)*

11. At 6:03 p.m. on June 5, 2020, Magistrate-Judge Gold issued a search warrant 20-MJ-414, authorizing a search and forensic examination of the electronic devices and media[1] seized from the Camovic Residence "pursuant to a consensual search on or about June 4, 2020." (Exhibit E, DC_51). The warrant sought evidence relating to violations of same offenses, (*Id.* at DC_52). It authorized an extremely broad search of "1. All records and information on the Subject Devices," as well as "5. Evidence indicating efforts to provide support to or promote the activities of terrorists and foreign terrorist organizations, including by committing acts of violence in support of such organizations[,]" and "6. Evidence regarding jihadist propaganda,

---

[1] The media and devises, referred to as "the Subject Devices" by the Government, were specified as: "1. One black Samsung mobile phone, IMEI # 358689100215795 2. One gold Samsung mobile phone, IMEI # 354255092268384 3. One Sandisk 64 GB hard drive 4. One Kingston 4 GB hard drive 5. One Samsung tablet, model SM-T520 6. One silver iPhone, Model A1660, FCC ID #BCG-E308512 7. One Polaroid tablet, model PMID1000B 8. Twenty-four (21) compact discs or digital video discs." (DC_51).

including communications regarding support for extremist attacks and support for violent extremist groups, including al-Qaeda in the Arabian Peninsula and ISIS." (*Id.* at DC_52-53).

12. Like the June 4 LG Phone Warrant, the June 5 Electronic Device Warrant relied largely upon evidence uncovered and seized during the flawed June 4 Consent Search to support the notion that Mr. Camovic's alleged assault was carried out in furtherance of a religious extremist ideology or that it was perpetrated with the assistance or guidance of co-conspirators. (*Id.* at DC_57-61).

13. The affidavit relied primarily on Mr. Camovic allegedly yelled "Allahu Akbar" during the attack, (¶ 14); that the attack seemed "planned and premeditated" based the manner of the attack and a text in which Mr. Camovic stated he would "be a while", (¶16); that Mr. Camovic learned from Individual-1 that there had been a shooting in the neighborhood before the attack via text, (¶20); and that Mr. Camovic was born outside the United States and lacked lawful status, (¶22).

### *The June 6 Corrective Warrant, 20-MJ-424. (Exhibit F)*

14. On June 6, 2020 at 5:48 p.m., Magistrate Judge Gold issued a search warrant authorizing the search of a Phillips Voicetracer Digital Recorder and a Silver iPhone that were seized during the June 4 Consent Search. (Exhibit F, DC_76-80). The purpose of this warrant was to correct an inaccurate serial number for the iPhone listed in the June 5 Device Warrant and to include reference to the Philips Voicetracer, which was not included in the June 5 Device Warrant. (*Id.* at DC_81). The June 6 Corrective Warrant incorporated by reference and relied upon the June 5 Device Warrant Affidavit to establish probable cause for the requested search warrant. (*Id.* at DC_82).

### *The June 7 Supplemental Electronic Device Warrant, 20-MJ-425. (Exhibit G)*

15.   On June 7, 2020 at 12:34 p.m., Magistrate Judge Gold issued a search warrant authorizing a forensic examination of the electronic devices obtained during the June 4 Consent Search inside the Camovic Residence. (Exhibit G, DC_94). The purpose of the June 7 Supplemental Electronic Device Warrant was to expand the scope of the search to include all the files on the Subject Devices that were created or accessed from January 1, 2019 through the present, due to the discovery of certain evidence the Government alleges it found on Camovic's electronic storage devices as early as March 29, 2019. (*Id.* at DC_105, ¶10).

16.   The accompanying affidavit incorporated certain new evidence uncovered during the search of Mr. Camovic's LG phone, pursuant to the June 4 LG Phone Warrant. (*See Id.* at DC_99, DC_103-106). As noted above, the June 4 LG Phone Warrant relied largely upon evidence obtained during the June 4 Consent Search to authorize the intrusion into Mr. Camovic's LG phone. The June 7 Supplemental Electronic Device Warrant Affidavit incorporated the prior search warrants and search warrant affidavits by reference and same were provided to Judge Gold as exhibits. (*Id.* at DC_102, ¶8).

17.   In addition to the evidence obtained during the June 4 Consent Search, the June 7 Supplemental Device Warrant Affidavit stated that in performing an electronic search of Mr. Camovic's LG cell phone, agents detected the presence of a certain application which can be used to access the Tor network. (*Id.* at DC_103). The affidavit contends Mr. Camovic used downloaded it on June 2, 2020 and deleted it on June 3, 2020, shortly before the incident, but fails to identify any actual communications or material related to terrorism or terrorist activity. (*Id.* at DC_104). The affidavit further reflected that the LG Device bore evidence that Mr. Camovic downloaded and used an application another application on June 2, 2020 and deleted it

8

on June 3, 2020. (*Id.* at DC_104 to DC_105). The affidavit claims that this application is used to track police activity and that according to records provided by the company that operates the application, Camovic's service began on or about May 26, 2018, thereby justifying a further search of the additional electronic devices seized from in the Camovic Residence. (*Id.* at DC_105).

18. The affidavit cites to the discovery of materials found during a "plain view review of the contents of an otherwise unmarked Sandisk 64 GB hard drive" that was recovered during the June 4 Consent Search. (*Id.*) In the Sandisk 64 GB Hard Drive, the Government claims to have found "175 file folders and 15 images" that that reflect "support for designated foreign terrorist organizations such as ISIS and contain two speeches by Anwar al-Awlaki that allegedly promote the concept of "jihad" as combat against disbelievers. (*Id.* at DC_106). No information about when, if at all, these items were viewed or by whom was established.

*The June 9 Discord Affidavit. 20-MJ-423. (Exhibit H)*

19. On June 9, 2020 at 12:08 a.m., the Honorable Sanket J. Bulsara, United States Magistrate-Judge, issued a search warrant authorizing a search and seizure of electronic information stored by Discord, Inc., for communications associated with a Discord account allegedly owned and operated by Mr. Camovic. The affidavit accompanying the warrant cites primarily to the evidence set forth in prior search warrant affidavits. This included the "electronic devices and electronic media recovered during the June 4 2020 Consent Search," (DC_209, ¶19), as well to the evidence that was derived therefrom by way of subsequent search warrants that obtained search authorization by citing to the fruits of the June 4 Consent Search. (DC_209 to DC-212).

20. The affidavit also included new information pertaining to a June 8, 2020 interview of one of Camovic's associates, referred to in the affidavit as witness "Individual-4." Notably absent from Individual-4's testimony is any definitive statement that Mr. Camovic harbors any violent extremist beliefs.

21. The remainder of evidence in the June 9 Discord Affidavit pertaining to violent religious ideology was unearthed in the challenged June 4 Consent Search and in the searches whose search warrant affidavits included evidence ultimately derived from the June 4 Consent Search, as set forth in the preceding paragraphs.

### *The June 9 Jeffersonville Warrant. 20-MJ-426. (Exhibit I)*

22. On June 9, 2020 at 8:33 p.m., the Magistrate-Judge Bulsara authorized a search warrant for a residence located in Jeffersonville, New York, to search for and seize several electronic devices believed to be contained therein. The affidavit in support built upon the material cited in the earlier affidavits addressed above, but incorporated certain new materials uncovered during the forensic examinations authorized by the June 7 Supplemental Electronic Device Warrant.

### *The June 10 Camovic Residence Search Warrant. 20-MJ-427. (Exhibit J)*

23. Because no electronic devices were found in the Jeffersonville residence, the Honorable James Orenstein issued a Search and Seizure Warrant on June 10, 2020, at 4:50 p.m., authorizing a search of 580 East 22nd Street, Apartment #5, Brooklyn, New York. The warrant was granted based on an assertion by law enforcement that the electronic devices expected to have been found in the Jeffersonville residence had been moved to the Camovic Residence in Brooklyn. (DC_246). The affidavit in support of the warrant incorporated by reference the entire Jeffersonville Search Warrant Affidavit and noted that Magistrate-Judge Bulsara had already

granted a search warrant authorizing the devices expected to be found in the Camovic Residence. (DC_239, ¶8 and 9). Citing statements by Husejin, the June 10 Camovic Residence Affidavit asserted that law enforcement had received information that the electronic devices sought in the June 9 Jeffersonville Search Warrant had been taken from the Jeffersonville house back to the Camovic Residence by members of the Camovic family.

    I certify that the foregoing statements made by me are true to the best of my knowledge and recollection and that I am subject to punishment should any statements made by me be willfully false.

_/s/ Robert G. Stahl_
Robert G. Stahl, Esq.
Law Offices of Robert G. Stahl, LLC
53 Cardinal Drive, 3rd Floor, Suite 4
Westfield, New Jersey 07090
